Filed 12/18/24  P. v. Williams CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

|  |  |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>DARREN CHARLES WILLIAMS,<br><br>     Defendant and Appellant. | B333816<br><br>Los Angeles County<br>Super. Ct. No. A763191 |

APPEAL from an order of the Superior Court of Los Angeles County.  William C. Ryan, Judge.  Affirmed.

Judith Kahn and Jennifer Peabody, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Nikhil Cooper, Deputy Attorneys General, for Plaintiff and Respondent.

———————————

Darren Charles Williams appeals from an order denying his petition to vacate his four second degree murder convictions and for resentencing under Penal Code section 1172.6.[1]  He argues the trial court erred by failing to consider his youth when determining whether he is entitled to resentencing.  Williams also argues his case must be remanded for a *Franklin*[2] hearing.  We reject his arguments and affirm the order.

**FACTUAL AND PROCEDURAL BACKGROUND**

1.  ***The offenses and trials***

On August 31, 1984, police found 58-year-old Ebora Alexander dead in her Los Angeles home from multiple gunshot wounds to the head.  Alexander apparently had been shot while sitting at her kitchen table having breakfast.  Police also discovered the bodies of Alexander's 24-year-old daughter Dietria and two of Alexander's grandsons, ages 13 and eight.  All three had been shot execution style in their beds.

The People charged Williams with four counts of first degree murder.  At trial, Ida Moore testified that Williams and Horrace Burns arrived at her house in the early morning of August 31, 1984.  Williams directed Burns to leave the house to pick up Tiequon Cox.  Burns and Cox returned 20 or 30 minutes later.

Williams asked Moore if she would drive him to the house of a woman who owed him money.  Moore agreed.  Moore, Williams, Burns, Cox, and Moore's girlfriend—DeLisa Brown— got into Moore's van.  Williams directed Moore where to drive,

---

[1]      References to statutes are to the Penal Code.

[2]      *People v. Franklin* (2016) 63 Cal.4th 261 (*Franklin*).

and he eventually told her to stop the van.  Williams and Cox got out of the van.  Burns seemed to want to get out as well, but Williams told him to stay in the van.  Williams and Cox went inside a house on the street where Moore had parked.

Moore heard gunshots a minute or two later, and Williams returned to the van holding a pistol.  He twirled the gun and remarked that he had one bullet left.  Moore described Williams's demeanor as "cool and natural."

Cox returned to the van about three minutes later.  Cox was holding a rifle and said he "blew a bitch's head off."

Williams directed Moore to drive them to a nightclub called the Vermont Club.  Moore parked the van outside the club.  Williams told Moore he was going to pay her for gas.  He got out of the van along with Cox and Burns.

Moore saw Williams later that day.  He gave her a $50 bill and told her to buy hair products for him.  Williams also told her she better " 'not be talking,' " otherwise " 'somebody is going to get hurt.' "  Williams made similar warnings two more times.  Williams instructed Moore not to drive the van and said he would have it repainted.

DeLisa Brown largely corroborated Moore's testimony.  According to Brown, while she was in the van, she heard someone say something about "killing everybody in the house."  Williams showed Brown a piece of paper with an address written on it.  He told Moore to park the van a few houses down the street from that address.

Williams and Cox got out of the van and walked down the street.  A few minutes later, Brown heard a lot of gunshots and saw Williams running toward the van, holding a pistol.

Cox also returned to the van holding a gun. Williams and Cox got in the van, and Williams directed Moore where to drive.

The People also presented evidence of statements Williams made to the police.[3] Williams said a club owner offered Cox and Burns $50,000 or $60,000 to kill a woman who was suing the club. Williams admitted driving to the house with Cox, and he noted that Cox had " 'been doing murders all his life.' " Williams claimed he ran away when Cox went up to the door.

The People's evidence showed that a woman named Valarie Taylor sued the Vermont Club a few months before the killings. Taylor's lawsuit alleged she suffered injuries after she was shot inside the club. Taylor lived two houses from the Alexander residence, on the same side of the street.

The People also presented evidence that on September 1, 1984—the day after the killings—Williams purchased a sportscar from a dealership. Williams paid $1,500 for the car in large bills. A week or two earlier, Williams's wife had tried to purchase a cheaper car from the same dealership, but she was not able to obtain financing.

The trial court instructed the jury that a person who aids and abets a crime is "liable for the natural and reasonable or probable consequences of any act that he knowingly and intentionally aided or encouraged."

The jury convicted Williams of four counts of first degree murder. But the jury failed to reach a verdict on the special circumstance allegation of multiple murders. In 1987 the

---

[3] The transcript of Williams's conversation with the police does not appear in the record on appeal. Therefore, we take these facts from the summary of the conversation that the parties provided to the trial court, which Williams does not dispute.

allegation was tried before a second jury.  The jury in the second trial found the special circumstance allegation to be true and returned a verdict of death.

## 2.    *The appeals and habeas petition*

The California Supreme Court set aside the jury's finding on the special circumstance, reversed the judgment of death, and affirmed the remainder of the judgment.  (*People v. Williams* (1997) 16 Cal.4th 635, 647 (*Williams I*).)  On remand, the trial court sentenced Williams to four consecutive terms of 25 years to life.  A different panel of this court affirmed the judgment and sentence (*People v. Williams* (Nov. 18, 1999, B120766) [nonpub. opn.] (*Williams II*)), and the Supreme Court denied Williams's petition for review (*People v. Williams* (Mar. 1, 2000, S084630) [nonpub. opn.]).

In November 2016, Williams filed a petition for a writ of habeas corpus in the superior court, seeking to have his first degree murder convictions set aside based on *People v. Chiu* (2014) 59 Cal.4th 155.  In January 2018, the superior court granted Williams's petition, reduced his first degree murder convictions to second degree murder, and resentenced him to four consecutive terms of 15 years to life.  Williams appealed and a different panel of this court affirmed.  (See *People v. Williams* (Nov. 29, 2018, B287899) [nonpub. opn.] (*Williams III*).)

## 3.    *Williams's petition for resentencing, the trial court's decision, and the appeal*

On February 14, 2019, Williams filed a petition for resentencing under section 1172.6.[4]  On December 4, 2020,

---

[4]    Williams filed his petition under former section 1170.95, which was later renumbered as section 1172.6.  (Stats. 2022,

the trial court issued a memorandum of decision denying Williams's petition. The court stated it was "bound by" "the recitation of facts stated by the California Supreme Court" in *Williams I*. The court concluded, "Based on these facts, the court finds that the People have met their burden beyond a reasonable doubt as to four counts of second degree murder (Penal Code section 189(a)–(b)) whether on conspiracy or direct aiding and abetting theories of liability." Williams appealed.

While Williams's appeal was pending, Senate Bill No. 775 (2021–2022 Reg. Sess.) (Senate Bill 775), went into effect. (Stats. 2021, ch. 551, § 1(a).) Based on Senate Bill 775's changes to the law, a different panel of this court reversed the order denying Williams's petition and remanded for the trial court to hold a new evidentiary hearing. (See *People v. Williams* (June 30, 2022, B310320) [nonpub. opn.] (*Williams IV*).) We explained that, "both at the evidentiary hearing and in its written memorandum of decision, the trial court did not cite or refer to any specific testimony at trial, or any exhibit or other evidence. In acting as the factfinder, the court appears to have relied heavily—if not exclusively—on the Supreme Court's factual summary and factual conclusions in Williams's direct appeal. After Senate Bill 775's changes to the statute, this is no longer permissible." (*Ibid.*)

### 4.    *The proceedings on remand*

On remand, the People filed a brief responding to Williams's petition. The brief summarized the evidence at trial, citing the trial transcripts. The People argued, despite the

---

ch. 58, § 10.) For the sake of simplicity, we refer only to section 1172.6 throughout this opinion.

reduction from first degree to second degree murder, the evidence at trial was overwhelming that Williams was a direct aider and abettor who harbored a specific intent to kill. According to the People, Williams was the mastermind and "shot-caller" in a conspiracy to commit murder for hire. Williams planned to murder Valarie Taylor and he recruited Cox, Burns, and Moore to help him. Williams aided and abetted Cox—who committed the actual killings—and did so with express malice. Williams also was part of a conspiracy to commit murder.

Williams, through appointed counsel, filed a response to the People's brief. He argued that, because he had been convicted of second degree murder, the trial court could not consider other theories of murder to determine his eligibility for relief under section 1172.6. According to Williams, there is insufficient evidence that he acted with express or implied malice, as required for second degree murder. Williams asserted the only dangerous act he engaged in was driving Cox to the house.

The court considered the petition at a hearing on July 12, 2023. Williams suggested the evidence shows he realized he was at the wrong house and walked back to the van before Cox killed the victims. He asserted the People did not try him under a felony murder theory because they could not prove he entered the house or had the intent to kill. According to Williams, the prosecutor accepted a reduction in his convictions from first degree to second degree murder—rather than retrying the case—for the same reason.

The court took the matter under submission at the end of the hearing. The court later issued a written order denying Williams's petition for resentencing. After summarizing the evidence presented at trial, the court found Williams planned

7

the attack and directed an accomplice to drive him and two accomplices to Alexander's street. Once there, Williams tried to locate a house matching an address he had written on a piece of paper. Williams voiced no disagreement when someone mentioned killing everyone in the house. Williams told one of his accomplices to stay in the van while he and Cox went into the house. Both Williams and Cox were armed, Williams was aware of Cox's propensity for violence, and Williams and Cox decided to kill everyone inside the house. After the murders, Williams went to a night club and collected a large sum of money as payment on a contract to kill a victim.

Based on these factual findings, the court concluded the People proved, beyond a reasonable doubt, that Williams is guilty of four counts of murder under multiple theories. According to the court, Williams is guilty because he acted with implied or express malice and "conspired, planned and led, [and] directly aided and abetted the group of codefendants." The court stated Williams also is guilty under a felony murder theory because he was a major participant in the underlying crime and acted with reckless indifference to human life.[5]

## DISCUSSION

### 1. *Resentencing under section 1172.6*

Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) took effect on January 1, 2019. (See Stats. 2018, ch. 1015,

---

[5] The court did not identify the underlying crime in which Williams participated. Given the court found Williams entered the home with the intent to commit murder, we presume the crime was burglary. (See §§ 189, subd. (a), 459 [any person who enters a house with the intent to commit a felony is guilty of burglary].)

§ 4.) The bill limited accomplice liability under the felony murder rule and eliminated the natural and probable consequences doctrine as it relates to murder. (*People v. Gentile* (2020) 10 Cal.5th 830, 842–843 (*Gentile*); *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).) "It amends sections 188, which defines malice, and 189, which defines the degrees of murder to address felony-murder liability, and it adds section [1172.6], which provides a procedure by which those convicted of murder can seek retroactive relief if the changes in the law would affect their previously sustained convictions." (*People v. Gutierrez-Salazar* (2019) 38 Cal.App.5th 411, 417.)

Under the law as amended, a defendant is guilty of murder under a felony murder theory only if: (1) the defendant was the actual killer; (2) with the intent to kill, the defendant aided or abetted the actual killer in the commission of murder in the first degree; or (3) the defendant was a major participant in the underlying felony and acted with reckless indifference to human life. (§ 189, subd. (e).)

Section 1172.6 provides a mechanism by which a person convicted of murder under the former law may be resentenced if he could no longer be convicted of murder because of the changes to sections 188 and 189. (*People v. Strong* (2022) 13 Cal.5th 698, 708; see generally *Gentile, supra*, 10 Cal.5th at p. 843; *Lewis, supra*, 11 Cal.5th at pp. 959–960.) Once a petitioner establishes a prima facie case for relief and the superior court issues an order to show cause, the matter proceeds to an evidentiary hearing. (*Strong*, at pp. 708–709; *People v. Vargas* (2022) 84 Cal.App.5th 943, 951.) The prosecution has the burden at the hearing to prove beyond a reasonable doubt that the petitioner is guilty of murder notwithstanding the

amendments to sections 188 and 189. (*Strong*, at pp. 708–709; *Vargas*, at p. 951.)

**2.    *Remand is not required for the trial court to consider Williams's youth***

Williams argues the case must be remanded for a new hearing because the trial court failed to consider his youth at the time of the offenses—24 years old—when determining whether he possessed the requisite mental state for murder.

Williams's argument fails for several reasons. First, Williams forfeited this issue by failing to raise it in the trial court. Generally, an appellant may not raise an issue on appeal unless he raised it below. (See *People v. Fuiava* (2012) 53 Cal.4th 622, 653 [defendant "forfeited this claim by failing to raise this issue below, when the trial court could have remedied the alleged shortcoming"]; *Sander v. Superior Court* (2018) 26 Cal.App.5th 651, 670 [" 'It is axiomatic that arguments not raised in the trial court are forfeited on appeal.' "].) As Williams seems to concede, he never argued—in his papers in support of his petition or orally before the trial court—his youth was relevant to whether he possessed the requisite mental state for murder. By failing to raise the issue below, Williams has forfeited it on appeal.

Williams argues his failure to raise the issue below is excusable because, at the time of the hearing on his petition, no cases had held a court must consider a petitioner's youth when determining his culpability at a section 1172.6 hearing. Williams is mistaken. The court considered Williams's petition at a hearing in July 2023. By that time, at least six published cases had stated an offender's youth is relevant to whether he is guilty of murder for purposes of a section 1172.6 petition. (See *People v. Harris* (2021) 60 Cal.App.5th 939, 960 (*Harris*);

10

*In re Moore* (2021) 68 Cal.App.5th 434, 454 (*Moore*)*; People v. Ramirez* (2021) 71 Cal.App.5th 970, 987 (*Ramirez*); *In re Harper* (2022) 76 Cal.App.5th 450, 470 (*Harper*); *People v. Keel* (2022) 84 Cal.App.5th 546, 558–559 (*Keel*); *People v. Jones* (2022) 86 Cal.App.5th 1076, 1093 (*Jones*).)

In *Harris, supra*, 60 Cal.App.5th 939, for example, the court reversed a summary denial of a resentencing petition, noting "given [the petitioner's] youth at the time of the crime, particularly in light of subsequent case law's recognition of the science relating to adolescent brain development [citations], it is far from clear that [the petitioner] was actually aware 'of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants.' " (*Id*. at pp. 944–945, 960.) About six months later, in August 2021, the court in *Moore, supra*, 68 Cal.App.5th 434, went "one step further" and explicitly held "a defendant's youth is a relevant factor in determining whether the defendant acted with reckless indifference to human life." (*Id*. at p. 454.) Several cases followed—*Ramirez* in November 2021, *Harper* in March 2022, *Keel* in October 2022, and *Jones* in December 2022—that discussed the relevance of an offender's youth in the context of resentencing petitions. (See *Ramirez, supra*, 71 Cal.App.5th at p. 987; *Harper, supra*, 76 Cal.App.5th at p. 470; *Keel, supra*, 84 Cal.App.5th at p. 562; *Jones, supra*, 86 Cal.App.5th at p. 1088, fn. 7.) Given the state of the law at the time of Williams's hearing, we decline to excuse his failure to raise the issue in the trial court.

Williams contends *People v. Pittman* (2023) 96 Cal.App.5th 400 (*Pittman*)—decided in October 2023—was the first case to hold a trial court must consider a petitioner's youth when

11

determining his culpability for purposes of a section 1172.6 petition.  (See *id.*, at p. 416.)  It seems the *Pittman* court was the first to hold explicitly that a petitioner's youth is relevant to whether he acted with implied malice.  (*Id.* at pp. 417–418.)  However, it was not the first to hold a court must consider a petitioner's youth in connection with a section 1172.6 petition.  In December 2022, the court in *Jones, supra*, 86 Cal.App.5th 1076, plainly stated "a defendant's youthful age *must* be considered" when determining whether he acted with reckless indifference to human life for purposes of a section 1172.6 petition.  (*Id.* at p. 1088, fn. 7, italics added.)  Here, the court considered Williams's petition more than six months after *Jones* was decided.  At that time, Williams may not have realized his youth was relevant to whether he acted with implied malice.  However, he should have known it was relevant to whether he acted with reckless indifference to human life, which was one of the grounds on which the trial court denied his petition.

Williams's reliance on *People v. Jimenez* (2024) 103 Cal.App.5th 994 is misplaced.  In *Jimenez,* the trial court denied a resentencing petition in 2021 after finding the defendant could be found guilty of implied-malice second degree murder.  The defendant filed a second petition in 2023, which the trial court denied at the prima facie stage on the ground that there was no legal basis to revisit its prior ruling.  (*Id.* at pp. 999–1000.)  The Court of Appeal reversed and remanded the case for reconsideration.  (*Id.* at pp. 997–998.)  The court explained that "since the time of the trial court's original ruling of August 2021, there have been significant changes in the law relating to the culpability of defendants who were young adults in their teens or early 20s at the time of their crimes." (*Id.* at p. 997.)  Given

12

the timing of those developments, the court could not presume the defendant had an adequate incentive to present evidence of his youth in connection with his first petition for resentencing. (*Ibid*.)

Here, in contrast, the most significant changes to the law occurred well before the hearing on Williams's petition. As we noted above, by the time of the hearing in July 2023, at least six published cases had held a defendant's youth is relevant to a section 1172.6 petition. One of those cases—*Jones, supra*, 86 Cal.App.5th 1076—states explicitly that a court "must . . . consider[ ]" a defendant's age when determining whether he is guilty under a felony murder theory. (*Id*. at pp. 1087–1088, fn. 7.) Given the state of the law at the time of Williams's hearing, he had every incentive to present evidence of his youth. His failure to do so forfeits the issue on appeal.

Even if we were to overlook the forfeiture, we would reject Williams's arguments on the merits. As a general rule, we presume the lower court was aware of, and followed, the law while performing its duties. (*Jones, supra*, 86 Cal.App.5th at p. 1092.) Given this presumption, in "the usual case, the fact that a court did not specifically mention certain evidence does not mean that the court 'ignored' that evidence." (*Ibid*.) Instead, we presume the lower court "duly considered the evidence presented to it." (*Ibid*.)

Here, there is nothing in the record that affirmatively demonstrates the court failed to consider Williams's youth before denying his petition. Therefore, we may presume the court was aware of the numerous cases holding a petitioner's youth is a relevant factor when considering whether to grant relief under section 1172.6. We also may presume the court followed those

cases when it determined the People proved Williams is guilty of felony murder as a major participant in an underlying offense who acted with reckless indifference to life.  Because that finding is sufficient to deny Williams's petition, the presumption is fatal to his argument on appeal.  (Cf. *People v. Oliver* (2023) 90 Cal.App.5th 466, 488–490 [noting it was unlikely the trial court knew to consider the petitioner's youth where the resentencing hearing was held before *Harris*, *Moore*, *Ramirez*, and *Harper* were decided]; *Jones*, *supra*, 86 Cal.App.5th at pp. 1091–1092 [declining to presume trial court considered the petitioner's youth where the resentencing hearing was held before *Moore*, *Ramirez*, and *Harper* were decided].)

Even if we assumed, for the sake of argument, that the court failed to consider Williams's youth, remand still would not be required because any error was harmless.  The parties seem to agree that this type of error is subject to the *Watson*[6] harmless error standard.  (See *Pittman, supra*, 96 Cal.App.5th at pp. 417–418; *Oliver, supra*, 90 Cal.App.5th at p. 489, fn. 8.)  Under that standard, we ask whether it is "reasonably probable that a result more favorable to [Williams] would have been reached in the absence of the error." (*Watson*, at p. 836.)

*Oliver, supra*, 90 Cal.App.5th 466 is instructive.  In that case, a jury convicted the defendant of first degree murder after his accomplice killed a man during a drug-related robbery.  (*Id.* at pp. 470–471.)  While planning the robbery with the defendant, the accomplice said he would kill the victim if the victim was alone.  (*Id.* at p. 472.)  The defendant and accomplice later met the victim in person, telling him they wanted to purchase $60,000

_____

[6]    *People v. Watson* (1956) 46 Cal.2d 818.

14

worth of cocaine.  When the victim revealed the cocaine, the accomplice shot him in the chest.  (*Id*. at pp. 470–472.)

A few decades later, the defendant filed a petition for resentencing under what is now section 1172.6.  The trial court denied the petition after finding the defendant could be convicted of first degree murder under a still-valid felony murder theory.  (*Oliver, supra*, 90 Cal.App.5th at pp. 476–477.)  On appeal, the defendant argued his case must be remanded for the trial court to consider his youth as part of the totality of the circumstances relevant to whether he was a major participant who acted with reckless indifference to human life.  (*Id*. at p. 485.)

The Court of Appeal held remand was not required because, even if the trial court should have considered the defendant's youth, any error was harmless.  (*Oliver, supra*, 90 Cal.App.5th at p. 485.)  The court explained that an offender's age is "just a proxy for maturity."  (*Id*. at p. 490.)  The defendant was 23 years old at the time of the murder, and "the presumption of immaturity weakens as a defendant approaches 26."  (*Id*. at p. 489.)

The court also pointed to the lack of evidence showing the defendant's behavior was motivated by impulsivity or vulnerability to peer pressure, which are the two primary areas that differentiate youthful offenders from their adult counterparts.  (*Oliver, supra*, 90 Cal.App.5th at p. 489.)  The record showed the defendant participated in the robbery despite being aware his accomplice planned to kill the victim if the opportunity arose.  The court also noted the lack of evidence that the defendant felt compelled to assist his accomplice.  (*Ibid*.)  The court concluded the defendant "made an intentional and volitional choice to take a calculated risk.  That risk failed

15

to turn out as he had hoped, not because [the victim] ended up dead, but because he and his cohorts were caught.  Under such circumstances, we see no reasonable likelihood that the trial court would have reached a different conclusion had it focused specifically on [the defendant's] age." (*Id*. at p. 490.)

Here, too, there is no reasonable likelihood the court would have reached a different conclusion had it focused on Williams's youth.  Williams was 24 years old at the time of the killings, which is older than the defendant in *Oliver*.  Accordingly, the presumption of immaturity is even weaker than in that case.

More importantly, as in *Oliver*, the circumstances of the killings do not reveal the sort of impulsivity or susceptibility to peer pressure that are the hallmark characteristics of youth.  The trial court found the murders occurred during the execution of a murder-for-hire scheme that Williams masterminded.  Williams recruited several people to help him execute his plan, including Cox, whom Williams acknowledged had " 'been doing murders all his life.' "  Given the nature of the plan, it is reasonable to infer Williams chose Cox for that reason, not despite it.

The court also found Williams took on a leadership role on the day of the killings.  Among other things, he instructed Burns to pick up Cox, directed Moore where to drive, and told Burns to stay in the van once they arrived at their destination.  Williams then accompanied Cox into the house while both men were armed.  After the killings, Williams directed Moore to a nightclub, where he collected on the contract.

The trial court's findings—which find ample support in the record—demonstrate that Williams engaged in substantial planning activity prior to the killings, refuting any suggestion

16

that he acted impulsively.  The fact that he failed to kill his intended victim does not show otherwise.  Rather, it demonstrates only that his execution of the plan was poor.  Nor does Williams point to anything in the record even to suggest he was acting under the influence of peer pressure.  If anything, as the leader of the group, Williams may have used peer pressure to convince the others to assist him.  On this record, and considering all the circumstances, there is no reasonable probability the trial court would have reached a different decision had it given full consideration to Williams's youth.  Accordingly, any error was harmless and does not require remand.

**3.      *We decline to remand the case for a* Franklin *hearing***

Williams argues his case must be remanded for the trial court to conduct a *Franklin* hearing so he has the opportunity to make a record of evidence that may be relevant at a future youth offender parole hearing.  (See § 3051; *Franklin, supra*, 63 Cal.4th 261.)

On April 1, 2022—while Williams's first appeal of the denial of his resentencing petition was pending in this court—Williams filed a pro per request for a *Franklin* hearing.  The court found Williams had made a prima facie showing that he is entitled to such a hearing.  The court requested additional briefing and appointed counsel—Fay Arfa—to represent Williams in connection with the hearing.

Sometime later, we decided *Williams IV* and remanded the case for a new hearing under section 1172.6.  On remand, the trial court appointed Joseph A. Markus and Andrew M. Stein to represent Williams in connection with his resentencing petition.  In the interests of judicial economy, the court appointed Markus to represent Williams in connection with the *Franklin*

17

hearing as well. The court terminated Arfa's appointment at the same time.

A few weeks later, on August 31, 2022, the People filed a concession letter acknowledging that Williams is entitled to a *Franklin* hearing. After receiving the letter, the court ordered the parties to meet and confer to set the matter for a status conference related to the *Franklin* hearing.

On May 22, 2023, the trial court granted Williams's request to appoint an expert to examine him, prepare a report, and testify on his behalf at a *Franklin* hearing. The record does not contain further references to the *Franklin* hearing.

The Attorney General concedes Williams is entitled to a *Franklin* hearing. Nevertheless, he contends Williams forfeited his opportunity for a *Franklin* hearing in connection with these proceedings by failing to object below. According to the Attorney General, Williams's remedy is to file a motion under section 1203.01 requesting a new *Franklin* hearing.

Unlike the parties, we see no connection between Williams's section 1172.6 petition and his request for a *Franklin* hearing. Apart from the fact that the court appointed the same counsel to represent Williams in connection with both, it seems the two proceedings are entirely separate. Because this appeal concerns only Williams's resentencing petition, there are no grounds for us to remand the case with directions to conduct a *Franklin* hearing. To the extent Williams is ready for the trial court to set a hearing, he should direct his request to that court. Alternatively, as the Attorney General suggests, he may request a new hearing under section 1203.01. (See *In re Cook* (2019) 7 Cal.5th 439, 458.)

18

## DISPOSITION

We affirm the order.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


EGERTON, J.

We concur:



EDMON, P. J.



ADAMS, J.